{¶ 41} Although I agree with the majority's conclusion to sustain appellant's first assignment of error and reverse and remand this case due to prosecutorial misconduct, I concur in judgment only for the reasons set forth as follows.
 {¶ 42} First, the majority makes credibility assessments in its presentation of the facts. When discussing how many times Jackson had touched T on her breasts, the majority concludes, "[a]though she never noted either the dates or the time of the year of these incidents, T seemed very sure of her count." It further determines, "M seemed to have a better memory of the incidents than T." These conclusions were no where to be found in the transcript, and thus, are credibility assessments made by the majority.
 {¶ 43} Appellate courts are not in a position to weigh the evidence or make credibility determinations. We are not present in the courtroom during questioning. It is the trier of fact who has the "best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page."Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418.
 {¶ 44} In addition, the majority makes legal conclusions when presenting the facts — as if they were the testimony of the witness. The majority makes the following statements: 1) "T testified as follows. When she attained purberty at about the age of eleven, Jackson began molesting her," 2) "[a]ccording to her testimony, *Page 16 
the `first' rape occurred in the basement * * *," 3) "M testified as follows. She stated Jackson began sexually abusing her when she reached the age of twelve * * *," and, 4) "M testified Jackson raped her on two occasions * * *."
 {¶ 45} A review of the testimony reveals no such legal conclusions or statements made by T or M. In their words, both women testified as to what happened to them. However, no where in their testimony do they state they were molested, abused or raped. These conclusory statements are not appropriate in the presentation of facts or testimony in a court opinion.
 {¶ 46} Further, when describing an incident that T testified to, which occurred in her bedroom, the majority states "[s]ometime when she was twelve years old * * *." However, T is not that specific in her testimony. She actually said that she was "about twelve" when it occurred. This is an important distinction, in a case where an issue exists as to whether the victim had reached the age of thirteen.
 {¶ 47} With respect to the same paragraph, the majority quotes T in part as follows: "[s]he stated Jackson was `trying to insert (his penis) in (her) vagina' for approximately ten minutes before he gave up." I have several problems with the majority's recitation of the facts here.
 {¶ 48} The following testimony is what actually transpired at trial:
 {¶ 49} "Q. Tell the ladies and gentlemen of the jury as much detail as you can remember what your grandfather did? *Page 17 
 {¶ 50} "A. Yes. I was laying on the bed, about then, you know, all I had on was my underwear, and he got on top of me.
 {¶ 51} "* * *
 {¶ 52} "Q. Tell the ladies and gentlemen of the jury what he did.
 {¶ 53} "A. He got on top of me and he tried to like move my underwear over so he can like penetrate, but it really don't work out like he planned, so-
 {¶ 54} "Q. When you say so he tried to penetrate?
 {¶ 55} "A. Yeah.
 {¶ 56} "Q. Do you know what a penis is?
 {¶ 57} "A. Yes, I do.
 {¶ 58} "Q. And what was he doing, if anything, with his penis?
 {¶ 59} "A. Trying to insert it is my vagina.
 {¶ 60} "* * *
 {¶ 61} "Q. How long did that episode, that incident last?
 {¶ 62} "A. For a couple of minutes, probably ten or fifteen minutes."
 {¶ 63} First, T never stated that Jackson "gave up" trying to insert his penis in her vagina. She stated that when he was trying to move her underwear so he could "like penetrate," that it did not work out as he had planned. This statement has several connotations, including the one made by the majority. However, that is not what T said. This court does not have the liberty to make those interpretations, that *Page 18 
is for the trier of fact.
 {¶ 64} Secondly, when the prosecution leads a witness on an important fact such as whether a defendant was using his penis or not, it was not appropriate to place brackets around "his penis," purporting it to be her testimony, especially in a case such as this. Brackets allow the reader to know that the author altered the original quote. However, they should not be used if the brackets will mislead the reader. See Intermin Edition to the Manual of the Forms of Citation used in the Ohio Official Reports (July 1, 1992), Walter S. Kobalka, Supreme Court Reporter, Reporter's Office for the State of Ohio, 31-32). It is my belief that the majority's characterization of T's testimony seriously misleads the reader.
 {¶ 65} I also disagree with the following characterization of the facts. When discussing the first incident, after the majority states, "[a]ccording to her testimony, the `first' rape occurred in the basement, when Jackson `started touching on (her) breasts * * *,'" it then states in the following sentence: "[s]he testified that Jackson ordered her to lay upon a pile of clothing on the floor, `and then he got on top of (her) and then he started to penetrate' her vagina with his penis." This sentence, "quoting" T, is also a serious misstatement of the testimony.
 {¶ 66} When discussing the pile of clothes on the floor, she only states:
 {¶ 67} "Then he told me to pull up my dress and pull down my underclothes, and I did. And then he told me to lay on the floor. And there was like clothes on the *Page 19 
floor, and I did. And then he got on top of me and he started to penetrate." The prosecutor then goes on to question T about another incident. After the word "penetrate," the majority added, "her vagina with his penis" to T's testimony. That is not what she testified to at that point. "Penetrate" could mean many things, only one of which is penis in the vagina.[3]
 {¶ 68} I further disagree with the following summation of T's testimony regarding her "interpretation" of what successful intercourse is:
 {¶ 69} "* * * T testified that Jackson `four times (had) intercourse' with her. T subsequently explained her interpretation of Jackson's actions on these occasions, however, by indicating Intercourse' encompassed any attempt at sexual conduct. To her, `successful' intercourse meant that Jackson ejaculated; she made no distinction on the basis of whether penetration occurred."
 {¶ 70} The following exchange actually occurred at trial regarding this subject:
 {¶ 71} "Q. At that point how many times had he sexually abused you?
 {¶ 72} "A. Four times.
 {¶ 73} "Q. Four times?
 {¶ 74} "A. Yes.
 {¶ 75} "Q. When you say he had sexually abused you four times, do you mean *Page 20 
he had intercourse with you or was that the fourth time? Tell us what you mean by that?
 {¶ 76} "A. That was four times he have sexual intercourse with me."
 {¶ 77} At that point, the prosecutor reviewed the four times with T. The following exchange then took place.
 {¶ 78} "Q. All right. Four times he attempted to place his penis in your vagina?
 {¶ 79} "A. Yes.
 {¶ 80} "Q. At any point in time was he able to successfully do that?
 {¶ 81} "A. Yes.
 {¶ 82} "Q. How many times was he able to successfully do that?
 {¶ 83} "A. Twice.
 {¶ 84} "Q. Twice. And when he was able to successfully do that, you indicated to us that at some point in time you noticed that there was some — are you familiar with the term ejaculate? Do you know what that means? [Contrary to what the prosecutor said, T had not indicated in her testimony up to that point, anything about ejeculation.]
 {¶ 85} "A. Yes.
 {¶ 86} "Q. Where was that?
 {¶ 87} "A. On my leg.
 {¶ 88} "Q. On your leg? *Page 21 
 {¶ 89} "A. Yes.
 {¶ 90} "Q. And how many times did that happen?
 {¶ 91} "A. Twice.
 {¶ 92} "Q. Twice. So twice he was able to ejaculate?
 {¶ 93} "A. Yes.
 {¶ 94} "Q. All right. And the other two times he was not able to place his penis fully inside of whatever cavity he was attempting to enter?
 {¶ 95} "A. Yes.
 {¶ 96} "Q. And over the course of time, how many times did he lift your shirt and touch your breasts or kiss your breasts?
 {¶ 97} "A. About twelve times.
 {¶ 98} A review of the T's testimony regarding this subject shows that T did not interpret "intercourse" to mean "any attempt at sexual conduct" as the majority concludes. She may have meant anyattempt at sexual intercourse, but not sexual conduct (which would include touching and/or kissing her breasts).
 {¶ 99} The majority then concludes, "[t]o her successful intercourse meant that Jackson ejaculated; she makes no distinction on the basis of whether penetration occurred." However, the actual testimony shows that T did make that distinction. She agreed with the prosecutor that Jackson was able to place his penis in her vagina twice, and that heattempted to do so two other times. That is a distinction. *Page 22 
Further, by answering "yes" to the prosecutor's question, sheagreed with him that "when [Jackson] was able to successfully do that," referring to the two times he placed his penis in her vagina, he also ejaculated. Thus, "successful intercourse" was not only successful ejaculation, but penetration.
 {¶ 100} Turning to the majority's analysis, I also disagree with the following portions of the opinion. When discussing the prosecutor's closing arguments regarding the elements of kidnapping, restraint of liberty, and the prosecutor's statement that T and M were not "free to leave," the majority concludes that, "T testified, however, that, sometimes, she felt that she `could have' left the basement." The majority oversimplifies T's response. The actual testimony regarding this matter was:
 {¶ 101} "Q. All right. When you were down in the basement, did you have an opportunity to leave?
 {¶ 102} "A. I could have, but no.
 {¶ 103} "When he called you over and lifted up your shirt, did you feel that you were free to leave?
 {¶ 104} "A. No, not really.
 {¶ 105} "Q. Why is that?
 {¶ 106} "A. Because I was too scared.
 {¶ 107} "Q. You were afraid? *Page 23 
 {¶ 108} "A. Yes.
 {¶ 109} "Q. Why were you afraid?
 {¶ 110} "A. Because that's my grandfather and he is bigger than me, and I don't think nobody, I mean, my grandmother wasn't going to be able to help me because she bedridden.
 {¶ 111} "Q. So you were afraid, and is that why you didn't leave?
 {¶ 112} "A. Yes."
 {¶ 113} Finally, I disagree with the following conclusion. Near the end of the majority opinion, it concludes that the prosecutor asked leading questions throughout, and then states, "the evidence of Jackson's guilt of each of the twenty-six counts of the indictment is not so overwhelming as to overcome the amount of misconduct that exists in the record." However, in the next paragraph, the majority contradicts what it just determined: "[t]his is an unfortunate result, because overwhelming evidence of Jackson's guilt was presented on a number of counts." This statement does not logically follow the majority's conclusion in the preceding paragraph.
 {¶ 114} Thus, I agree that this court must reverse and remand due to prosecutorial misconduct, sustaining Jackson's first assignment of error. However, I concur in judgment only for the reason set forth in this concurring opinion.
[3] T does agree with the prosecutor, at a much later point in her testimony, that Jackson penetrated her vagina with his penis that first time in the basement. However, she does not state it when she was discussing the pile of clothes on the floor. *Page 1